**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SUSAN B. LONG, ET AL.,** | |
| Plaintiffs, | |
| v. | Civil Action No. _____ |
| **DEPARTMENT OF HOMELAND SECURITY,** | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 65, plaintiffs Susan B. Long, David Burnham, and Larry Katzman respectfully move for entry of a preliminary injunction to enjoin defendant's unlawful attempts to impede plaintiffs' efforts to obtain records concerning the Department of Homeland Security's enforcement of criminal laws against immigrants. Plaintiffs seek an order requiring defendant to (1) expedite processing of plaintiffs' Freedom of Information Act requests; (2) complete the processing of plaintiffs' requests within 20 days; and (3) provide a *Vaughn* index within 30 days.

In support of this motion, plaintiffs rely on the following documents: (1) the Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction, and the exhibits attached thereto; and (2) the Declaration of Larry Katzman. A proposed form of order and certificate of service are also included. Plaintiffs ask that the Court, pursuant to Local Civil Rule 65.1(d), schedule a hearing on this motion at the

Court's earliest convenience, or in the alternative expeditiously decide this motion

on the papers.

Respectfully submitted,

/s/

May 10, 2006

ALAN A. PEMBERTON
D.C. Bar No. 367108

ROGER A. FORD*
Massachusetts Bar No. 664675

COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington DC 20004-2401

(202) 662-6000

Counsel for Plaintiffs

*Not admitted to the District of
Columbia Bar or the bar of this Court.
Supervised by principals of the firm.*

- 2 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SUSAN B. LONG, ET AL.,** | |
| Plaintiffs, | |
| v. | Civil Action No. _____ |
| **DEPARTMENT OF HOMELAND SECURITY,** | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiffs Susan B. Long, David Burnham, and Larry Katzman respectfully submit this memorandum of points and authorities in support of their motion for a preliminary injunction.

## <u>Introduction</u>

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of agency records concerning the number and treatment of aliens with arrests or convictions for drug possession crimes. These records are potentially highly relevant to the Supreme Court's consideration and decision of two cases for which it has granted writs of certiorari, *Lopez v. Gonzales* and *Toledo-Flores v. United States*, both of which concern the treatment of aliens convicted of certain drug and other crimes, and the records will enhance the ability of parties interested in these cases to present useful factual information to the Court. Moreover, they directly relate to the ongoing debate —

among the public, in Congress, and at the White House — about reform of United States immigration laws.  Unlike other instances in which expedited processing in FOIA requests is sought, then, release of the information plaintiffs seek is not merely in the public interest with an open-ended timeframe; because deadline for submission of briefs to the Supreme Court is imminent, and because Congress is actively considering changes to the immigration laws, plaintiffs must receive any responsive records soon in order to make the information available in time contribute to the public debate.

Plaintiffs clearly satisfy the applicable legal standards for expedited processing of FOIA requests, which require DHS to grant expedited processing if (1) the requester is "primarily engaged in disseminating information," and (2) there is "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(5)(E); *accord* 6 C.F.R. § 5.5(d)(1)(ii).  Nonetheless, defendant DHS has failed to even *respond* to plaintiffs' requests for expedited processing — despite regulations that require the agency to decide such a request within *ten calendar days* of receipt of the request, 6 C.F.R. § 5.5(d)(4), and to immediately notify the requester in writing of the decision, 6 C.F.R. § 5.6(c).

Defendant DHS's failure to respond to plaintiffs' requests for expedited processing of their FOIA requests clearly violates applicable law.  Given the pendency of the *Lopez* and *Toledo-Flores* litigation in the Supreme Court, the important issues involved in that case, and the schedule by which they will be decided, plaintiffs will be irreparably harmed if defendant DHS's violation of the

law is permitted to continue.  Likewise, the public debate about how, and how vigorously, to enforce laws against immigrants are the focus of great present controversy; undue delay in responding to plaintiffs' FOIA requests will prevent the Supreme Court, Congress, and the public from considering fully all information relevant to that debate.

Accordingly, plaintiffs seek this Court's expeditious consideration of this matter and entry of an preliminary injunction compelling defendant DHS to process and disclose the requested records within twenty days.  Plaintiffs satisfy this Court's familiar four-part test for such injunctive relief, in that (1) they are likely to succeed on the merits; (2) they will irreparably harmed in the absence of such an injunction; (3) there will be little burden on the interests of others if the injunction is granted; and (4) the public interest strongly favors an injunction.

## Statement of facts

### A.    The *Lopez* and *Toledo-Flores* litigation in the Supreme Court

Jose Antonio Lopez, a legal permanent resident of the United States, was in 1997 convicted of aiding and abetting the possession of a controlled substance in South Dakota.  Ex. A at 5 (Petition for Writ of Certiorari, *Lopez v. Gonzales*, No. 05-547 (Sup. Ct. filed Oct. 23, 2005)).  The Immigration and Naturalization Service ("INS") then initiated removal proceedings against Lopez.  *Id.*  Lopez conceded removability, but filed an application for cancellation of removal as a long-time permanent resident. *Id.* at 6.  The Immigration Judge denied the application on the ground that federal law forbids the Attorney General to cancel removal for an alien convicted of an "aggravated felony," which for present purposes means felony drug

possession.  *Id.*  Although the crime Lopez was convicted of would not qualify as a felony under federal law, it is a felony under South Dakota law. *Id.* at 5.  The Board of Immigration Appeals and Eighth Circuit affirmed the Immigration Judge's denial of Lopez's application. *Id.* at 6–7.  Lopez petitioned the Supreme Court for a writ of certiorari on October 31, 2005.

On January 24, 2006, the government filed a response to the petition.  The government's response agreed that the question presented was an important one on which the courts of appeals disagreed, and that the case would be an appropriate opportunity to resolve the disagreement. Ex. B at 10 (Brief of Respondent on Petition for Writ of Certiorari, *Lopez v. Gonzales*, No. 05-547 (Sup. Ct. filed Jan. 24, 2006)).  The response also noted that:

> The question of when state felony drug offenses constitute aggravated felonies under the INA is a frequently recurring issue of significant importance.  The Department of Homeland Security has informed this Office that, in Fiscal Year 2005, more than 77,000 aliens with criminal records were ordered removed from the United States, and that approximately 9.5% of those aliens had arrests for drug possession offenses.

*Id.*

On April 3, 2006, the Supreme Court granted certiorari in *Lopez v. Gonzales,* consolidated with another case presenting a similar question, *Toledo-Flores v. United States.* Ex. C at 2 (Supreme Court Order List, April 3, 2006).  The question on which the Court granted certiorari is "[w]hether an immigrant who is convicted in state court of a drug crime that is a felony under the state's law but that would only be a misdemeanor under federal law has committed an 'aggravated felony' for

- 4 -

purposes of the immigration laws."  Ex. D (Question Presented, *Lopez v. Gonzales*,

No. 05-547 (Sup. Ct. April 3, 2006)).

**B.    The recent public debate about immigration law and policy**

Apart from the pending Supreme Court consideration of *Lopez* and *Toledo-*

*Flores,* immigration policy and the criminal laws applicable to immigrants have

been the focus of great controversy and substantial public debate in the past few

months.[1]  In December 2005 the House of Representatives passed a bill that would

for the first time make it a crime — and in some circumstances an aggravated

felony, the same categorization at issue in the *Lopez* and *Toledo-Flores* cases — to

be present in the United States illegally.  Ex. E (Carolyn Lochhead, *A Million Say:*

*Let Us All Stay; A Backlash Could Hamper Chances for Reform*, S.F. CHRON., May

2, 2006, at A1).  The bill would also make it a crime to provide assistance to illegal

immigrants.  Ex. F (Randall C. Archibald, *Immigrants Take to U.S. Streets in Show*

*of Strength*, N.Y. TIMES, May 2, 2006, at A1).  Meanwhile, several leaders in the

Senate support a bill that while milder, nevertheless includes substantial

enforcement components.[2]  *Id.*  The president has also said repeatedly that he

favors a law that would provide illegal immigrants with a potential path toward

---

[1]    For instance, a Westlaw search of the ALLNEWS database for news articles containing the terms "immigration" and "drugs" returned 4,119 articles in the six months from November 2005 to April 2006.  That number represents a 73% increase over the 2,376 articles from November 2004 to April 2005.

[2]    *But see* Comprehensive Immigration Reform Act of 2006, S. 2612, 109th Cong. (2006) (retaining House provisions that would criminalize unlawful presence and expanding definition of aggravated felony; co-sponsored by Senators Specter, Kennedy, Hagel, and McCain, among others).

citizenship, coupled with stronger enforcement of immigration laws at the U.S.

border.  *Id.*

Few issues have shown the same ability to divide normally aligned parties

that is shown by immigration reform: labor groups versus congressional Democrats,

business interests versus Congressional Republicans, the House versus the Senate,

and so on.  The enforcement-heavy House bill has only fueled these divisions,

sparking massive demonstrations.  *See id.*  It is clear that public debate over the

president's and Congress's response to immigration will be considerable in the

coming months, especially given the midterm Congressional elections in November.

**C.     Plaintiffs' FOIA requests and requests for expedited
         processing, and defendant DHS's failure to respond timely to
         plaintiffs' requests**

Two FOIA requests are at issue in this litigation.  The first was sent by fax to

U.S. Immigration and Customs Enforcement ("ICE"), a component of defendant

DHS, on February 2, 2006.  That request noted the government's claims in its reply

brief in *Lopez v. Gonzales* that 77,000 aliens with criminal records were ordered

removed in 2005, and that 9.5% of those aliens had arrests for drug possession

offenses.  Ex. G at 1 (Plaintiffs' First FOIA Request, Feb. 2, 2006).  Concerned about

the dearth of available information regarding the size, composition, or treatment of

that group, plaintiffs asked for a copy of any source document for the statistics the

government cited in its reply brief.  *Id.*  Plaintiffs also asked for classification under

FOIA standards as a news media requestor and as an educational research

institution, as well as for a full waiver of fees under FOIA's waiver provisions.  *Id.*

Having received no acknowledgement or response to their February 2 FOIA request, on March 8, 2006, plaintiffs sent by fax a follow-up letter seeking the status of their request. Ex. H (Letter from Plaintiffs to ICE FOIA Office, March 8, 2006). On March 16, Andrea Terwilliger (the spelling is phonetic) from ICE left a voice mail message for plaintiff Larry Katzman, stating that there was no status or tracking number yet assigned to plaintiffs' February 2 request. Katzman Decl. at ¶ 12. Ms. Terwilliger and Mr. Katzman spoke by phone one day later, and Ms. Terwilliger told Mr. Katzman that FOIA requests are processed in the order they are received, and that it could take 18 months to receive a response to plaintiffs' request. *Id.*

The second FOIA request at issue in this litigation was sent via FedEx on April 24, 2006, and received one day later. This request sought

> any and all existing analyses, memos, reports, tabulations, memos and other forms of communication or recordings (letters, emails, telephone notes, etc.) that contain statistical information regarding the number of aliens, particularly lawful permanent residents, with arrests and/or convictions for drug possession.

Ex. I at 1–2 (Plaintiffs' Second FOIA Request, Apr. 24, 2006). The letter further requested

> statistical information not only on [the aliens'] numbers but also on (a) their immigration status, (b) their characteristics (for example, how long they have been in the United States, the number and status of children, how long ago the arrest or conviction took place), (c) whether or not they were classified as aggravated felons, and (d) the outcome of their cases, (for example, have they been ordered removed, was removal judicial or administrative, have they granted some form of relief?).

*Id.* at 2. So as to assist to the greatest extent possible in expediting plaintiffs'
request, the letter noted that much of the information sought might be available in
the DACS database in the DECISION-CODE, ENT-DATE, and CHILD-STAT fields.
*Id.* Although plaintiffs' April 24 FOIA request sought data relevant to the *Lopez*
and *Toledo-Flores* cases, unlike the February 2 request it also sought information
relevant to the broader question of criminal laws applicable to immigrants.

Plaintiffs' April 24 letter asked that their request be processed in an
expedited manner, pursuant to 5 U.S.C. § 552(a)(5)(E) and 6 C.F.R. § 5.5(d). *Id.* at
2–5. The letter argued that plaintiffs, as employees of TRAC, were "primarily
engaged in dissemination information," and that there was urgency to inform the
public about the removal of aliens for aggravated felony convictions. *Id.* By
separate letter on April 24, plaintiffs also asked that their February 2 request be
granted expedited processing, for the same reasons.[3] Ex. J at 2–4 (Plaintiffs' Letter
Requesting Expedited Processing of February 2 FOIA Request, April 24, 2006). To
date, defendant DHS has not responded to either request for expedited processing,
despite the ten-calendar-day deadline for a decision.

## **Argument**

FOIA, and the DHS regulations promulgated pursuant to it, provide that a
requester is entitled to expedited processing of a records request when (1) the

---

[3]   This request was made pursuant to 6 C.F.R. § 5.5(d)(2), which provides that a
request for expedited processing "may be made at the time of the initial request for
records *or at any later time"* (emphasis added).

requester is "primarily engaged in disseminating information," and (2) there is "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(5)(E); *accord* 6 C.F.R. § 5.5(d)(1)(ii). Both of these straightforward requirements are met in this case, and so accordingly defendant DHS is obligated to expedite the processing of plaintiffs' requests. Nevertheless, DHS has failed to comply with the requirements of both FOIA and of its own regulations. This failure constitutes a continuing impediment to plaintiffs' (and the public's) ability to examine the government's treatment of aliens convicted of drug possession crimes, to provide that information to Congress and the public, and to provide the Supreme Court with full information on which to base its decision in the *Lopez* and *Toledo-Flores* cases. Defendant DHS's actions are clearly unlawful and should be enjoined.

### A.    This Court has jurisdiction to grant the requested relief.

This Court has jurisdiction to consider *de novo* plaintiffs' request for expedited processing of their FOIA requests. FOIA provides, in pertinent part:

> Agency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

5 U.S.C. § 552(a)(6)(E)(iii). The cited provision for judicial review provides that:

> On complaint, the district court … in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo … .

5 U.S.C. § 552(a)(4)(B).

DHS regulations provide that "[w]ithin ten calendar days of its receipt of a request for expedited processing, the proper component shall decide whether to grant it and shall notify the requester of the decision." 6 C.F.R. § 5.5(d)(4).

FOIA further provides that "[a]ny person making a request to any agency for records … shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph," *i.e.*, 5 U.S.C. § 552(a)(6). 5 U.S.C. § 552(a)(6)(C)(i).

In this case, defendant DHS failed to abide by its own regulations, promulgated according to 5 U.S.C. § 552(a)(6), requiring that it act on a request for expedited processing within ten calendar days of receipt. Moreover, with respect to plaintiffs' February 2, 2006 request, DHS failed to produce responsive records within the generally-applicable twenty-working-day time limit established by 5 U.S.C. § 552(a)(6)(A)(i). *See Oglensby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("If the agency has not responded within the statutory time limits, then … the requester may bring suit."). Accordingly, all applicable administrative remedies have been exhausted, and plaintiffs' claim is ripe for adjudication.

**B.      Plaintiffs are entitled to entry of a preliminary injunction.**

The standards governing the granting of a preliminary injunction in a FOIA case are the same as in any other case: the Court must assess (1) the likelihood of success on the merits; (2) any irreparable injury to the plaintiff if preliminary relief is not granted; (3) any burden on others' interests from an injunction; and (4) the public interest in granting or denying relief. *Elec. Privacy Info. Ctr. v. Dep't of*

*Justice*, 416 F. Supp. 2d 30, 35–36 (D.D.C. Feb. 16, 2006) (citing *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)).  Consideration of these factors establishes clearly plaintiffs' entitlement to a preliminary injunction.

### 1.    *Plaintiffs are likely to succeed on the merits.*

Plaintiffs' likelihood of success is quite high, because under FOIA and the DHS regulations governing processing of FOIA requests, plaintiffs are clearly entitled to expedited processing.  Moreover, defendant DHS has plainly failed to comply with the required timetable for deciding plaintiffs' request for expedited processing, and for processing of plaintiffs' underlying records requests.  Accordingly, plaintiffs are likely to prevail on the merits.

FOIA requires that agencies provide for expedited processing "in cases in which the person requesting the records demonstrates a compelling need."  5 U.S.C. § 552(a)(6)(E)(i)(I).  "Compelling need" is defined as, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity."  *Id.* § 552(a)(6)(E)(v)(II).  DHS regulations establish an essentially identical standard, providing for expedited processing when the request involves "[a]n urgency to inform the public about an actual or alleged government activity, if made by a person primarily engaged in disseminating information."  6 C.F.R. § 5.5(d)(1)(ii).  Plaintiffs meet these two requirements.

*First,* plaintiffs are primarily engaged in disseminating information to the public.  Plaintiffs are employees of TRAC, a nonprofit, nonpartisan educational institution primarily engaged in making information about the federal

government's enforcement and regulatory efforts more accessible to the public.

Through their association with TRAC, each plaintiff in this case is "primarily

engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). The facts of

this case are nearly identical to those which were decisive in *Leadership Conf. on*

*Civ. Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. Dec. 9, 2005). In that

case, the plaintiff was "engaged in dissemination of information regarding civil

rights" because its mission was to "serve as the site of record for relevant and up-to-

the minute civil rights news and information." *Id.* Similarly, here TRAC provides

detailed and comprehensive data and analysis regarding activities of the federal

government.

      As TRAC's web site states: "The purpose of TRAC is to provide the American

people — and institutions of oversight such as Congress, news organizations, public

interest groups, businesses, scholars and lawyers — with comprehensive

information about federal staffing, spending, and the enforcement activities of the

federal government." *See* Ex. K (Transactional Records Access Clearinghouse,

About Us, available at http://trac.syr.edu/aboutTRACgeneral.html).

      TRAC accomplishes this goal in two primary ways: by acquiring information

about federal government activities, primarily through use of FOIA, that it then

analyzes; and by then making the data and analyses available via the Internet, so

that the underlying information can be understood and interpreted more accurately

by its users. *Id.* TRAC maintains collections of information about numerous parts

of the government, including the IRS, DEA, FBI, ATF, and DHS, as well as the

operations of United States courts.  *Id.*  TRAC obtains and analyzes this

information with the goal of informing the public about government policy; it has no

commercial interest in any of the information it obtains.

TRAC's data is widely used by the public, government officials, and members

of the media.  TRAC's web site gets millions of hits each year.  Katzman Decl. at ¶

9.  Data obtained and analyzed by TRAC has been cited by thousands of news

articles in dozens or hundreds of publications.[4]  Likewise, TRAC data has been used

by congressional committees including the Senate Finance and Judiciary

Committees and the House Government Operations Committee, numerous federal

agencies, and public interest groups such as the National Rifle Association and

Human Rights Watch.  *Id.* at ¶ 7–8.

To that end, the individual plaintiffs employ their distinct areas of experience

and expertise, enabling TRAC to accomplish its goal of informing the public about

government activity.  Plaintiff David Burnham, Co-Director of TRAC, is a

researcher, writer, and investigative reporter with 30 years experience in the

critical examination of government agencies.  *See* Ex. M (David Burnham

biography, available at http://www.epic.org/epic/board/burnham/).  Prior to co-

founding TRAC, he was for eighteen years a reporter with the *New York Times.  Id.*

---

[4]    For the three years ending April 30, 2006, TRAC was cited by name in 741
news articles, according to a search of Westlaw's ALLNEWS database.  *See, e.g.*, Ex.
L (Richard Willing, *FBI cases drop as it focuses on terror*, USA Today, April 13, 2006
(citing TRAC data)).  Additionally, TRAC data were used in numerous articles for
which the source was not attributed, and in numerous wire service stories which
ran in multiple newspapers.

He is author of the books *Above the Law: Secret Deals, Political Fixes, and Other Misadventures of the U.S. Department of Justice; A Law Unto Itself: Power, Politics and the IRS;* and *The Rise of the Computer State. Id.* Plaintiff Susan B. Long is Associate Professor at the Whitman School of Management, Syracuse University, teaching in the area of managerial statistics, and Co-Director of TRAC. Ex. N (Susan Long biography, available at http://whitman.syr.edu/people/ facultymember.asp?fac=38). She has more than 25 years experience studying the federal government, and her publications include *Design and Delivery of Online Mining Tools: Turning Government Data Into Usable Information. Id.* Plaintiff Larry Katzman is an attorney who specializes in immigration law. Katzman Decl. at ¶¶ 2–3. He is Manager of TRAC's Immigration Project, which aims to make available detailed, systematic, and complete data and analysis of the government's enforcement of immigration laws. Ex. O (TRAC Immigration, About the Project, available at http://trac.syr.edu/immigration/about.html).

 *Second,* there is in this case urgency to inform the public concerning actual government activity. In interpreting that requirement, the D.C. Circuit has noted, with approval, the legislative history of the "urgency to inform" requirement:

> The standard of "urgency to inform" requires that the information requested should pertain to a matter of a current exigency to the American public and that a reasonable person might conclude that the consequences of delaying a response to a FOIA request would compromise a significant recognized interest. The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard.

*Al-Fayed v. Cent. Intel. Agency*, 254 F.3d 300, 310 (2001) (quoting H.R. Re. No. 104-795, at 26 (1996)).  Accordingly, the D.C. Circuit set forth three factors courts must consider when determining whether a request for expedited processing should be granted: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity."  *Al-Fayed*, 254 F.3d at 310.

The government activity in this case is self-evident: each year ICE processes tens of thousands of immigrants with drug convictions, some of whom are removed for aggravated felony convictions.  *See* Ex. B at 10.

The current exigency and consequences of delaying a response are twofold. First, the Supreme Court will soon consider whether aliens convicted of drug possession crimes which are felonies under state law, but only misdemeanors under federal law, have been convicted of "aggravated felonies" and are thus ineligible for cancellation of removal by the Attorney General.  *See* Ex. D.  Counsel for Lopez have informed TRAC that briefing in the Supreme Court will be due on June 16, 2006, with a possible one-month extension after that date.  Katzman Decl. at ¶ 14. As the government conceded in its brief in response to the petition for a writ of certiorari,  Ex. B at 10, little data is available about this sizable group of immigrants, including their numbers, how long they've been in the United States, what crimes they have been convicted of, or how their families are affected by DHS enforcement activities.  If the Supreme Court, and third parties who wish to file

amicus briefs, are to have access to full information, the records TRAC seeks must be received soon in order to give TRAC and other interested parties sufficient time to analyze and disseminate the information.

Second, plaintiffs' April 24, 2006 FOIA request is directly relevant to the current public debate concerning enforcement policies affecting immigrants. One of the most controversial provisions of the immigration bill passed by the House in December would make simply being in the United States without an appropriate visa an "aggravated felony" in some circumstances. *See* Border Protection, Antiterrorism, and Illegal Immigration Control Act of 2005, H.R. 4437, 109th Cong. §§ 201, 203 (2005). Accordingly, the records plaintiffs request concerning the existing treatment of immigrants who have been convicted of aggravated felonies — their numbers, typical case outcomes, and the effect on their families, for instance — are clearly relevant to the ongoing debate over the coming months.

Unlike in *Al-Fayed* and other instances in which expedited processing is sought and denied, this matter is not merely in the public interest with an open-ended timeframe. In *Al-Fayed* the D.C. Circuit found no exigency when plaintiffs requested information related to the deaths of Princess Diana and Dodi Al Fayed, which had occurred three years earlier. *Al-Fayed*, 254 F.3d at 311. With no ongoing media coverage, proceedings or controversies related to the underlying documents, plaintiffs had no substantial interest in getting the records within a specific timeframe. In contrast, when there *is* an ongoing controversy and a timeline within which access to records is substantially more valuable, courts find

sufficient exigency to grant expedited processing.  *See, e.g., Leadership Conf. on Civ. Rights*, 404 F. Supp. 2d at 260 ("[T]he urgency element is met because of the upcoming expiration of the special provisions of the Voting Rights Act in 2007. Plaintiff is monitoring election law reform and coordinating the legislative campaign to re-authorize provisions of the [Act].");  *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (finding exigency because of the "ongoing debate regarding the renewal and/or amendment of the Patriot Act"); *cf. Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) (ordering expedited processing when documents would be used in an upcoming court proceeding).

Just as ongoing debates about the expiration and reauthorization of important and controversial legislation demonstrated urgency to obtain relevant information in *Leadership Conf. on Civ. Rights v. Gonzales* and in *ACLU v. Dep't of Justice,* here the Supreme Court's consideration of *Lopez* and *Toledo-Flores* — which will decide what the government concedes is a "frequently recurring issue of significant importance," Ex. B at 10 — and the ongoing debate in Congress and among the public over immigration policies, demonstrate the need for all parties involved to have the fullest possible range of information.

DHS regulations require the agency to decide a request for expedited processing "[w]ithin ten calendar days of its receipt," and to immediately notify the requester of the decision.  6 C.F.R. § 5.5(d)(4).  Notwithstanding plaintiffs' clear entitlement to expedited processing and the requirement that DHS respond within ten days of receipt, defendant has entirely failed to respond to plaintiffs' request for

expedited processing.  Plaintiffs are accordingly exceedingly likely to succeed on the merits.

### 2.    *Plaintiffs will be irreparably injured in the absence of injunctive relief.*

Plaintiffs will be irreparably harmed if defendant DHS fails to provides the expedited processing the law entitles plaintiffs to.  The very nature of the right that plaintiffs seek to vindicate in this action — expedited processing and release of agency records — depends upon timeliness.  As this Court has recognized, the government's failure to expeditiously process and release records "constitutes a cognizable harm" when there is "value in hastening release" of the records.  *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 40.  "As time is necessarily of the essence in cases like this, such harm will likely be irreparable."  *Id.* at 40–41.

In addition to the loss of its right to expedited processing, further delay risks harming plaintiffs' ability to timely inform the public about the government's treatment of aliens with drug possession convictions, and the public's ability to participate in the related pending Supreme Court cases and debate over immigration policy.  The government has already conceded that this is a "frequently recurring issue of significant importance."  Ex. B at 10.  It noted that in 2005, "more than 77,000 aliens with criminal records were ordered removed from the United States, and that approximately 9.5% of those aliens had arrests for drug possession offenses."  *Id.*  For the public, Congress, and the Supreme Court to have the benefit of full information, though, it is essential that the defendant provide the information plaintiffs request.  Otherwise they will be limited to considering only

the government's version of the facts — an especially dangerous possibility when, as here, the issue concerns the government's conduct.  As the Supreme Court has observed, FOIA is "a means for citizens to know what the government is up to.  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (internal quotation marks and citation omitted).[5]

### 3.    *If injunctive relief is granted, others' interests will not be substantially burdened.*

There is no substantial risk that any other party will be substantially burdened if a preliminary injunction issues.  The defendant has no legitimate interest in violating the law by disregarding the ten-day deadline for granting or denying a request for expedited treatment, or by delaying release of responsive documents.  Likewise, no third party's interests will be significantly burdened.  Congress intended that expedited FOIA requests would be processed before other, less urgent requests: FOIA that expedited requests be processed "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  The slight delay other requesters would face — if any — is far outweighed by the burden on plaintiffs if the injunction is not

---

[5]    Although the risk of irreparable injury to the plaintiffs in this case is substantial, a lesser showing would nevertheless justify the relief requested when, as here, the plaintiffs' position on the merits is strong.  As the D.C. Circuit has noted, "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."  *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005) (quoting *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 8 F.3d 738, 747 (D.C. Cir. 1995)).  "[I]njunctive relief may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  *CSX Transp., Inc.*, 406 F.3d at 670 (quotation marks omitted).

granted, and FOIA's expedition provisions themselves resolve questions of such delay for other requesters in favor of the party entitled to expedition. *See Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 41.

### 4.    *The public interest strongly favors injunctive relief.*

Finally, the public interest strongly favors injunctive relief in this case. As this Court recently recognized, "there is an overriding public interest ... in the general importance of an agency's faithful adherence to its statutory mandate." *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 42 (quoting *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977)). Further, "the public interest is also served by the expedited release of the requested documents because it furthers FOIA's core purpose of shedding light on an agency's performance of its statutory duties." *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 42 (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)) (internal quotation marks omitted).

The public interest is also served by the issuance of an injunction in this case because it will help ensure that full information is available, as the Supreme Court, the Congress, and the public debate and decide important issues of immigration law and policy. This is not merely the usual public interest in information about how the government operates. Rather, when, as now, contentious issues are being actively debated, policies are being formed, and legal decisions are being made, incomplete information could result in the adoption of substantively inferior law and policy. Accordingly, the public interest favors the processing of plaintiffs' FOIA

requests as soon as possible, while the information can still have an effect on that debate.

**C.    This Court should order defendant DHS to process plaintiffs' FOIA requests within a specific timeframe.**

In addition to ordering defendant DHS to expedite processing of plaintiffs' FOIA requests, this Court should set a specific timetable on which defendant must produce records responsive to plaintiffs' requests. Though such an injunction is not the norm in FOIA cases, this Court has nevertheless recognized that it is appropriate in cases seeking expedited processing. Congress expressly required agencies to respond to a request for expedited processing within ten calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and made such processing mandatory, rather than discretionary, when the requisite showings are made, *id.* § 552(a)(6)(E)(i). Furthermore, Congress provided for immediate judicial review of adverse determinations, rather than requiring that requesters go through administrative appeals first. *Id.* § 552(a)(6)(E)(iii). Congress accordingly demonstrated an intent that courts should act quickly to vindicate the right to expedition of FOIA requests. This legislative intent would be frustrated if an agency, ordered by a court to expedite processing of FOIA requests, could then determine its own timetable for fulfilling the requests.

DHS has plainly demonstrated a willingness to disregard the clear requirements of FOIA, both by failing to respond to plaintiffs' February 2, 2006 request within the standard twenty-business-day period that applies to *all* FOIA requests, 5 U.S.C. § 552(a)(6)(A)(i) (or even the thirty-business-day period that

applies in "unusual circumstances," *id*. § 552(a)(6)(B)(i)), and by failing to respond to plaintiffs' request for expedited processing within ten calendar days, *id*. § 552(a)(6)(E)(ii)(I).  Although FOIA requires agencies to process requests for which expedited processing has been granted "as soon as practicable," *id*. § 552(a)(6)(E)(iii)), it does not set a specific timetable for doing so.  This Court should set such a timetable, and accordingly ensure that DHS is not able to evade Congress's intent.  *See Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 37 (defendant DOJ's argument, that "as soon as practicable" imposes no concrete deadline for production of responsive documents, would lead to an absurd result and "is easily rejected").

　　This Court and others have imposed specific processing deadline on agencies in past cases.  In *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002), this Court ordered the Commerce and Transportation Departments, to process, respectively, 9,000 and 6,000 pages of material within 60 days and to provide a *Vaughn* index twelve days later.[6]  *Id*. at 141.  In *ACLU v. Dep't of Defense*, a case involving a request for which expedited processing had been granted, the court ordered agencies to produce responsive documents and to provide a *Vaughn* index within 30 days.  339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004).  Finally, in *Elec. Privacy Info. Ctr. v. Dep't of Justice,* this Court ordered defendant DOJ to complete processing within 20 days and to provide a *Vaughn* index ten days later. 416 F.

---

　　[6]　Notably, the documents at issue in that case were *not* claimed to be entitled to expedited processing.

Supp. 2d at 43.  The Court reasoned that Congress could not possibly have intended that an expedited request, which must be processed "as soon as practicable," could be in the usual case processed *more slowly* than the 20 days agencies within which agencies must normally must respond.  Accordingly, after 20 days the burden shifted to the agency to explain why disclosure was not practicable.  *Id.* at 40.

In this instance, it should be eminently practicable to process plaintiffs' FOIA requests within the statutory deadline.  Plaintiffs' February 2 FOIA request seeks only the specific documents which were the source for the statistics cited by the government in its reply on certiorari in *Lopez*.  *See* Ex. G.  Moreover, those statistics dealt only with Fiscal Year 2005 data, so any responsive documents should be relatively recent.  That request should accordingly not require extensive searching. Katzman Decl. at ¶ 13.  Plaintiffs' April 24 request, while broader, is nevertheless narrower than many FOIA requests: it seeks only analyses, reports, or other documents with information regarding a specific class of aliens, those with arrests or convictions for drug possession.  *Id.*; *see also* Ex. I.  Further, that request is limited to statistical information about those aliens.  Plaintiffs' requests are thus narrower than those at issue in *ACLU v. Dep't of Defense*, which included 17,000 to 20,000 pages of documents and communications relating to the treatment of detainees since Sept. 11, 2001, rather than merely statistics, and which included substantial quantities of documents which required line-by-line examination for material exempt from disclosure because of national security concerns.  339 F. Supp. 2d at 502–05.  Nevertheless, in that case the court ordered the defendant to

produce all responsive documents, along with a *Vaughn* index, within 30 days. *Id.* at 505.

Given the substantial public interest in disclosure of the records plaintiffs seek, plaintiffs' clear entitlement to expedited processing, and defendant DHS's apparent disregard of the requirements of FOIA, plaintiffs ask that the Court order DHS to process plaintiffs' FOIA requests within twenty days, the statutory norm even for non-expedited FOIA requests, and to provide a *Vaughn* index ten days after that. Otherwise, plaintiffs will be irreparably harmed by defendant's clear disregard of the law.

## <u>Conclusion</u>

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be granted. Plaintiffs ask that this Court, pursuant to Local Civil Rule 65.1(d), schedule a hearing on this motion at the Court's earliest convenience, or in the alternative expeditiously decide this motion on the papers.

Respectfully submitted,


/s/
_____

May 10, 2006                        ALAN A. PEMBERTON
                                    D.C. Bar No. 367108

                                    ROGER A. FORD*
                                    Massachusetts Bar No. 664675

                                    COVINGTON & BURLING
                                    1201 Pennsylvania Avenue, N.W.
                                    Washington, D.C.  20004-2401

                                    (202) 662-6000

                                    Counsel for Plaintiffs

                                    *Not admitted to the District of
                                    Columbia Bar or the bar of this Court.
                                    Supervised by principals of the firm.

## Certificate of service

I hereby certify that on May 10, 2006, one copy of the foregoing motion for a

preliminary injunction was served by hand on the following party:

Kenneth L. Wainstein
United States Attorney for the District of Columbia
555 4th Street, NW
Washington DC 20001.


_____

ROGER A. FORD