UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>SUSAN B. LONG, <u>et</u> <u>al.</u>,        )<br>                                      )<br>                                      )<br>        Plaintiffs,             )<br>                                      )<br>    v.                              )<br>                                      )<br>DEPARTMENT OF HOMELAND      )<br>SECURITY,                        )<br>                                      )<br>        Defendant.             )<br>_____ ) | 1:06cv00878<br>Judge: Paul L. Friedman |

<u>**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

**INTRODUCTION**

Plaintiffs are members of the Transactional Records Access Clearinghouse ("TRAC"), a research center associated with Syracuse University. They seek the extraordinary relief of a preliminary injunction for expedited processing of two of their Freedom of Information Act ("FOIA") requests filed with Immigration and Customs Enforcement ("ICE"), a component of defendant Department of Homeland Security ("DHS"). The FOIA requests, dated February 2 and April 24, 2006, seek comprehensive information concerning all aliens with criminal records, including those who have been deported. Plaintiffs sought expedited processing as to both requests on April 24, 2006, and filed suit two weeks later on May 10, 2006, along with the present motion for preliminary injunction, before any agency response.

As discussed below, this Court should deny plaintiffs' motion. Not only is the relief of a preliminary injunction generally inappropriate in FOIA cases, but plaintiffs have failed to meet

the heavy burden of showing that they are entitled to have priority over others in the agency's processing of their FOIA requests.   Plaintiffs' asserted urgent need for the information – that the information is important to the United States Supreme Court's determination of Lopez v. Gonzales, No. 05-547, cert. granted, 126 S.Ct. 1651, 74 U.S.L.W. 3289, 74 U.S.L.W. 3556, 74 U.S.L.W. 3559 (U.S. April 3, 2006), and Toledo-Flores v. United States, No. 05-7664, cert. granted, 126 S.Ct. 1652, 74 U.S.L.W. 3556, 74 U.S.L.W. 3559 (U.S. April 3, 2006), and to the "ongoing national debate about immigration policy" (Pls.' Ex. I at 4) – is speculative at best.  The issue pending before the Supreme Court in Lopez and Toledo-Flores is one of pure statutory interpretation to which the requested information has no direct relevance.  Moreover, while the requested information may well touch on current immigration issues, public debate and Congressional consideration of such issues will likely continue for a long time to come.  There is no indication that the value of the requested information will be lost or that any significant, recognized interest will be compromised if plaintiffs do not obtain the information on an expedited basis.  Indeed, if FOIA requests are entitled to expedited processing simply because they relate to some current event or public debate, then expedited processing would become the norm, significantly compromising the orderly processing of FOIA requests.

In other words, there is no exigency justifying expedited processing and no irreparable injury absent the issuance of preliminary injunction.  Indeed, a preliminary injunction is intended to provide a shield against imminent injury while the court considers the merits of a dispute.  Yet, plaintiffs are attempting to use it as a litigation tactic to seek the ultimate relief in this case – the processing of their FOIA requests and the provision of a Vaughn index – all before the agency has had an opportunity to answer the plaintiffs' complaint.  Because plaintiffs are

unlikely to succeed on the merits of their expedition claim, because no irreparable harm will befall plaintiffs absent the entry of a preliminary injunction, and because the public interest favors an orderly and fair process for all FOIA requestors, this Court should deny plaintiffs' motion for preliminary injunction.

## STATUTORY AND REGULATORY BACKGROUND

Agencies ordinarily process FOIA requests for agency records on a first in, first out basis. The agency generally is required to process requests within 20 working days, 5 U.S.C. § 552(a)(6)(A)(I)-(ii), and is given an additional ten days in "unusual circumstances" as defined in § 552(a)(6)(B)(iii). The agency is permitted even longer processing periods in cases of "exceptional circumstances" as defined in § 552(a)(6)(C)(I). DHS's regulation provides that where the statutory time limits for processing a request cannot be met, the DHS component "shall as soon as practicable" notify the requestor of the unusual circumstances and the date by which processing of the request can be expected to be completed. 6 C.F.R. § 5.5(c)(1). Where the extension is for more than ten working days, the component shall provide the requestor with an opportunity either to modify the request so that it may be processed within the time limits or to arrange an alternative time period with the component for processing the request or a modified request. Id.

A person requesting agency records, however, may request expedited processing if he can demonstrate a "compelling need" for the records. 5 U.S.C. § 552(a)(6)(E)(i)(I); see also Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)); Al-Fayed v. Central Intelligence Agency, 254 F.3d 300,

3

305 n.4 (D.C. Cir. 2001) (the requestor bears the burden of showing that expedition is

appropriate). "[C]ompelling need" is defined to mean:

> (I)     that a failure to obtain requested records on an expedited basis under this
>         paragraph could reasonably be expected to pose an imminent threat to the
>         life or physical safety of an individual; or
>
> (II)    with respect to a request made by a person primarily engaged in
>         disseminating information, urgency to inform the public concerning actual
>         or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v). Expedition, when granted, entitles requestors to move to the front of

an agency processing queue, ahead of requests filed previously by other persons. Thus, both

Congress and the D.C. Court of Appeals have emphasized that the expedition categories are to be

"narrowly applied" because, "[g]iven the finite resources generally available for fulfilling FOIA

requests, unduly generous use of the expedited processing procedure would unfairly disadvantage

other requestors who do not qualify for its treatment." Al-Fayed, 254 F.3d at 310 (quoting H.R.

Rep. No. 104-795, reprinted at 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)). Indeed, as the

Court of Appeals has also noted, "an unduly generous approach would also disadvantage those

requestors who do qualify for expedition, because prioritizing all requests would effectively

prioritize none." Id.

DHS's regulation on expedited processing tracks the statutory language of FOIA,

providing that requests and appeals will be taken out of order and given expedited treatment only

when it is determined that they involve:

> (i)     Circumstances in which the lack of expedited treatment could reasonably
>         be expected to pose an imminent threat to the life or physical safety of an
>         individual;

> (ii)    An urgency to inform the public about an actual or alleged federal
> government activity, if made by a person primarily engaged in
> disseminating information.

6 C.F.R. § 5(d)(1).   The relevant DHS component is to decide whether to grant expedition

within ten calendar days, and if a request for expedited treatment is granted, the request shall be

given priority and be processed "as soon as practicable."  6 C.F.R. § 5.5(d)(4); see also 5 U.S.C.

§ 552(a)(6)(E)(iii).  Agency action to deny or affirm denial of a request for expedited processing,

and failure by an agency to respond in a timely manner to such a request, is subject to judicial

review based on the record before the agency at the time of the determination.  5 U.S.C.

§ 552(a)(6)(E)(iii).


## FACTUAL BACKGROUND

Plaintiffs Susan B. Long and David Burnham are directors of TRAC, which they describe

as a research center that aims to provide the public with information about activities of the

federal government.  Compl. at ¶ 3.  Plaintiff Larry Katzman is the manager of TRAC's

Immigration Project.  Compl. at ¶ 5.  The Project apparently aims to "compile a detailed set of

information about the federal government's activities relating to immigration."  Compl. at ¶ 7.

On February 2, 2006, plaintiffs faxed a FOIA request to ICE asking for documents and

sources underlying certain statistics cited in the Solicitor General's brief filed in Lopez v.

Gonzales, see Pls.' Ex. G at 1, namely that "in Fiscal Year 2005, more than 77,000 aliens with

criminal records were ordered removed from the United States, and that approximately 9.5% of

those aliens had arrests for drug possession offenses."  Pls.' Ex. B at 10.  The Solicitor General

attributed the source of that information to DHS.  Plaintiffs stated in their letter that they were

interested in obtaining a more detailed breakdown of the number of aliens with criminal records

who were ordered removed by the nature of their offenses.  See Pls.' Ex. G at 1.  They indicated

that they need the records in order to prepare their "regularly-published reports on immigration

enforcement."  Pls.' Ex. G at 2.  In the same letter, plaintiffs also asked for classification under

FOIA as a representative of the news media and as an educational research institution, and for a

full waiver of fees.  See Pls.' Ex. G at 2.

On March 8, 2006, plaintiff Katzman sent a letter asking for the status of the February 2,

2006 request.  See Pls.' Ex. H.  On March 16, an ICE staff assistant Andrea Tewilliager

telephoned Katzman to inform him that ICE had yet to assign a tracking number to the February

2 request.  See Katzman Decl. at ¶ 12.  The next day, Tewilliager spoke to Katzman and

informed him that ICE had a backlog of several thousand requests, with some requests taking as

long as 18 months to process.  Id.; see also Pls.' Ex. J at 5.  Upon information and belief, ICE

currently has 5,023 pending FOIA requests with a processing staff of about 8 persons.

On April 24, 2006, plaintiffs sent another FOIA request seeking "any and all existing

analyses, memos, reports, tabulations, memos and other forms of communication or recordings

(letters, emails, telephone notes, etc.) that contain statistical information regarding the number of

aliens, particularly lawful permanent residents, with arrests and/or convictions for drug

possession."  Pls.' Ex. I at 1-2.  As to those aliens, plaintiffs further requested

> statistical information not only on their numbers but also on (a) their immigration
> status, (b) their characteristics (for example, how long they have been in the
> United States, the number and status of children, how long ago the arrest or
> conviction took place), (c) whether or not they were classified as aggravated
> felons, and (d) the outcome of their cases (for example, have they been ordered

removed, was removal judicial or administrative, have they [sic] granted some form of relief?).

Pls.' Ex. I at 2.  Plaintiffs emphasized that the above listed characteristics were meant to be illustrative only, and that their request was "not limited to data or statistics derived from any one database but covers all existing information sources."  Pls.' Ex. I at 2.

In the same letter, plaintiffs also asked that their request be expedited because the requested records are relevant to the Supreme Court's consideration of Lopez and Toledo-Flores, which have an estimated briefing deadline of June 16, 2006.  According to plaintiffs, they urgently need to analyze and make available the requested information well before June 16 so that the Supreme Court "[does] not operate in an informational vacuum."  Pls.' Ex. I. at 3-4. They also urged that "the ongoing national debate about immigration policy attests to the timeliness of this request."  Pls.' Ex. J. at 4.  In a separate letter also dated April 24, 2006, plaintiffs similarly asked that their February 2, 2006 FOIA request be expedited for the same reason.  See Pls.' Ex. J at 2-4.

Before any agency response, on May 10, 2006, plaintiffs filed this instant suit seeking an order requiring that DHS process their FOIA requests immediately, and, that upon completion of such expedited processing, disclose and make copies available the requested records in their entirety.  See Compl. at 7.   Plaintiffs also moved for a preliminary injunction, seeking an order requiring DHS to process their FOIA requests within 20 days and to provide a Vaughn index within ten days after that.

**ARGUMENT**

**PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION**

**I.      Preliminary Injunctive Relief Is An Extraordinary Measure And Is Particularly Inappropriate in FOIA Cases**

As an initial matter, it is well established that preliminary injunctive relief is "an extraordinary measure, and . . . the power to issue such exceptional relief 'should be sparingly exercised.'" Experience Works, Inc. v. Chao, 267 F. Supp. 2d 93, 96 (D.D.C. 2003) (quoting Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969)); accord Boivin v. US Airways, Inc., 297 F. Supp. 2d 110, 116 (D.D.C. 2003) ("'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion'") (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)) (emphasis in original).  In considering a plaintiff's request for a preliminary injunction that preserves the status quo a court must weigh four factors: "(1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest."  Al-Fayed, 254 F.3d at 303; accord Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).

Furthermore, a party who seeks a mandatory injunction to change, rather than preserve, the status quo "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction."  Bancoult v. McNamara, 227 F. Supp. 2d 144, 151 (D.D.C. 2002) (quoting

Veitch v. Danzig, 135 F. Supp. 2d 32, 35 (D.D.C. 2001)); see also Columbia Hospital for

Women Foundation, Inc. v. The Bank of Tokyo-Mitsubishi, Ltd., 15 F. Supp. 2d 1, 4 (D.D.C.

1997).

Preliminary injunctive relief thus is particularly inappropriate in a FOIA case because

rather than maintaining the status quo, it would give a plaintiff the relief he ultimately seeks on

the merits, such as the grant of requests for expedition, fee waiver and the disclosure of non-

exempt documents. See Univ. of Texas v. Camenisch, 451 U.S. 390, 397 (1981) ("it is generally

inappropriate for a federal court at the preliminary injunction stage to give a final judgment on

the merits"). The use of the preliminary injunction also unnecessarily adds an additional layer of

procedure to FOIA litigation when there are already adequate procedural mechanisms for

managing that process. For example, the parties can agree to a reasonable production schedule,

or if they fail to agree, the court can set a production schedule at an initial conference. If more

significant delays are necessary, the court can set a deadline for a defendant agency to move for a

stay under the standards set forth in Open America v. Watergate Special Prosecution Force, 547

F.2d 605 (D.C. Cir. 1976). There is generally no legitimate reason for complicating these

straightforward procedures by resorting to the more drastic preliminary injunction remedy.

Thus, absent significant delay or other extraordinary circumstances such as when life or

liberty interests are at stake, see, e.g., Cleaver v. Kelley, 427 F. Supp. 80, 81 (D.D.C. 1976), or

when the agency itself has determined that expedited processing is warranted but fails to provide

satisfactory assurances as to when the processing would be completed, see, e.g., EPIC v. Dep't of

Justice, No. 06-0096, 2006 WL 357831, at *1 and *6 (D.D.C. Feb. 16, 2006), courts in this

district have routinely denied requests for preliminary injunctive relief in a FOIA case. See, e.g.,

Electronic Privacy Info. Center v. U.S. Dep't of Justice, No. 03-2078 (D.D.C., Oct. 20., 2003) (attached as Ex. 1) (denying, sua sponte, a FOIA requestor's motion for preliminary injunction for expedited processing because such relief "would effectively grant all the relief plaintiff seeks" and is in the nature of a request for mandamus); Al-Fayed v. CIA, No. 00-2092, 2000 WL 34342564, at *6 (D.D.C. Sept. 20, 2000) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to plaintiff's FOIA requests); Judicial Watch v. U.S. Dep't of Justice, No. 00-1396  (D.D.C., June 27, 2000) (attached as Ex. 2) (denying plaintiff's "emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of Information Act request"); Assassination Archives and Research Ctr., Inc. v. CIA, No. 88-2600, 1988 U.S. Dist. LEXIS 18606, at *1 (D.D.C., Sept. 29, 1988) (rejecting motion for preliminary injunction asking the court to order expedited processing of a FOIA request).  As discussed below, plaintiffs cannot meet this stringent standard

## II.    Plaintiffs Have Failed to Establish a Likelihood of Success on the Merits

### A.    Plaintiffs are not entitled to expedited processing.

Plaintiffs have no likelihood of success on the merits of their expedition claim because they have not met their burden of showing that expedited processing is warranted in this case.  A requestor seeking expedited processing must demonstrate a "compelling need" for expedition in that the requestor is primarily engaged in disseminating information and has an "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v); see also 6 C.F.R. § 5(d)(1).  The "urgency to inform" standard in turn requires that (1) "the request concerns a matter of current exigency to the American public"; (2) "the

consequences of delaying a response to a FOIA request would compromise a significant

recognized interest"; and (3) the request concerns federal government activity.  Al-Fayed, 254

F.3d at 310 (quoting H.R. Re. No. 104-795 at 26 (1996)).  As the D.C. Circuit Court of Appeals

has held, these factors must be "narrowly applied" and "[t]he public's right to know, although a

significant and important value, would not by itself be sufficient to satisfy this standard."  Id.

Plaintiffs argue that they have a compelling need for expedition because the requested

information relate to pending Supreme Court cases Lopez and Toledo-Flores, which have an

estimated briefing deadline of June 16, 2006.  According to plaintiffs, they need to analyze and

make available the requested information well before June 16 so that the Supreme Court "[does]

not operate in an informational vacuum."  Pls' Ex. I at 3-4 and Ex. J. at 3-4.  Plaintiffs also argue

that their FOIA requests are relevant to "the ongoing national debate about immigration policy,"

Pls' Ex. I at 4 and Ex. J. at 4, and to Congress' consideration of changes to immigration laws, see

Pls' Memo. in Support of Pls' Mot. for A Preliminary Injunction, at 16.

None of these reasons, either taken together or individually, is sufficient to show

plaintiffs' entitlement to expedition.  That the requested information may relate to pending cases

before the U.S. Supreme Court does not make it a matter of current exigency to the American

public, nor does it mean that any delay in obtaining the information would compromise a

significant, recognized interest.  As a preliminary matter, where a requestor is granted expedition

because the information he seeks is relevant to a pending court case, there is usually a much

greater interest at stake, such as jeopardy to life or liberty.  See, e.g., Neely v. FBI, No. 7:97-

0786, slip op. at 9 (W.D. Va. July 27, 1998) (granting expedited processing of FOIA request for

plaintiff who had motion for new criminal trial pending and had made specific allegations related

11

to agency document); <u>Ferguson v. FBI</u>, 722 F. Supp. 1137, 1141-43 (S.D.N.Y. 1989) (holding

that plaintiff's request for information regarding his particular post-conviction proceeding

required expedition); <u>Cleaver v. Kelley</u>, 427 F. Supp. 80, 81 (D.D.C. 1976) (determining that

exceptional circumstances existed when plaintiff faced multiple criminal charges carrying

possible death penalty in state court); <u>Raulerson v. Reno</u>, 95-cv-2053, slip op. at 4-6 (D.D.C.

Mar. 30, 1998) (denying FBI's motion to stay proceedings for nearly three years when plaintiff

had asserted he had only two years to appeal criminal conviction and the requested documents

may aid in preparation of appeal).  Even where a significant liberty interest is implicated, courts

do not always grant expedition.  <u>See</u> <u>Ruiz v. United States Dep't of Justice</u>, No. 00-0101, slip op.

at 3 (D.D.C. Sept. 27, 2001) ("To the extent that [the requested] record are intended for use in an

attack on plaintiff's criminal conviction, this situation does not constitute an exceptional need.").

      Far from affecting a significant recognized interest, the requested information is not even

relevant to the Supreme Court's determination of <u>Lopez</u> and <u>Toledo-Flores</u>, because the issue in

those cases involves a pure question of law – the interpretation of the Immigration and

Nationality Act ("INA"), which attaches a variety of immigration consequences to an alien's

commission of an "aggravated felony."  INA defines "aggravated felony" to include offense

conduct described in 8 U.S.C. § 1101(a)(43) "whether in violation of Federal or State law."  8

U.S.C. § 1101(a)(43) (final paragraph).  The issue in <u>Lopez</u> and <u>Toledo-Flores</u> is whether an

immigrant who is convicted in state court of a drug crime that is a felony under the state law but

that would only be a misdemeanor under federal law has committed an "aggravated felony"

within the meaning of INA.  <u>See</u> Pls.' Ex. D (questions presented).  The issue is one of statutory

interpretation, and any statistical information will not shed light on that interpretation.

12

Plaintiffs place great emphasis on the Solicitor General's position in <u>Lopez</u> that the question of when state felony drug offenses constitute aggravated felonies under the Immigration and Nationality Act is a "frequently recurring issue of significant importance" and that "proper resolution of the issue has important implications for enforcement of the Nation's immigration and criminal laws." Pls.' Ex. B at 6, 10. Plaintiffs focus particularly on the Solicitor General's reference to statistics from Fiscal Year 2005 "that more than 77,000 aliens with criminal records were ordered removed from the United States, and that approximately 9.5% of those aliens had arrests for drug possession offenses." Pls.' Ex. B at 10. However, the Solicitor General's recognition of the importance of the legal issue and citation to statistics in no way lend support to plaintiffs' claim of exigency. Indeed, the Solicitor General cited the statistics in the context of a response to a petition for a writ of certiorari. At that stage, the Supreme Court's inquiry involves, among other things, whether there is a circuit split on the issue and whether the issue is recurring and of sufficient importance to merit the Court's review. <u>See</u> U.S. Supreme Court Rule 10. Once the Supreme Court has decided to review the case, only the merits of the precise legal question is relevant – which is whether an immigrant convicted of a felony drug crime under state law has committed an "aggravated felony" within the meaning of immigration law. The number of aliens who might fit within this category and statistical information about their characteristics have no relevance to this inquiry. In any event, the litigants to the actions pending before the Supreme Court are responsible for, and fully capable of, bringing relevant information to the Court's attention. It is not for a third party to claim an exigency with respect to a matter in which it has no involvement.

13

Similarly, that the requested information may relate to "ongoing national debate about immigration policy" is far from establishing that it is a matter of current exigency to the American public.  To be sure, the requested information may be useful in public debates on immigration issues.  This is particularly true given the broad scope of plaintiffs' requests, which seek information concerning the characteristics of aliens, such as their immigration status, length of time in the United States, the number and status of children, criminal conviction history (presumably under both state and federal laws), and removal information.  However, as plaintiffs acknowledge, discussions concerning immigration policy have been on-going for some time, and like Congress' consideration of amendments to immigration law, they are likely to continue for a long time to come.  Plaintiffs have also stated that they need the information to prepare for their "regularly-published reports" on immigration enforcement.  Pls.' Ex. G at 2.  There is simply no indication that the value of the information will be lost or that "a significant recognized interest" will be compromised if plaintiffs are not granted expedited processing.  Indeed, the 256 page House bill cited by plaintiffs also shows that Congress' consideration of amendments to immigration law covers a wide range of topics.  See Border Protection, Antiterroism, and Illegal Immigration Control Act of 2005, H.R. 4437, 109th Cong. (2005).  If simple relevance to one or two sections of any bill is sufficient to show exigent need for the requested information, then many FOIA requests will have to be expedited, contravening Congress' intent that the FOIA expedition categories be "narrowly applied."  H.R. Rep. No. 104-795, reprinted at 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

14

This case is thus unlike those where the requestor has demonstrated a compelling need for expedition in light of pending legislative action affecting significant interests.  Cf. ACLU v. U.S. Dep't of Justice, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (granting expedition where the requestor sought information of government surveillance efforts which concern the potential invasion of the public's privacy interests and directly relate to whether Congress should renew the Patriot Act's surveillance provisions which were due to expire); Leadership Conference on Civil Rights v. Gonzales, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (granting expedition where the administrative record was full of news reports and magazine articles regarding minority voter intimidation and vote suppression, and where the requestor's FOIA requests could have a vital impact on development of the substantive record in favor of re-authorizing or making permanent the special provisions of the Voting Rights Act that were due to expire).

### B.      The agency's failure to follow relevant statutory deadlines does not establish plaintiffs' right to expedited processing.

Plaintiffs also argue that they are likely to succeed because ICE failed to process their February 2, 2006 FOIA request within 20 working days and to decide their April 24, 2006 expedition requests within 10 calendar days.  This argument can be dismissed out of hand.  An agency's inability to respond within the 20 working day period simply means that the requestor may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies.  See The Nation Magazine v. Dep't of State, 805 F. Supp. 68, 72 (D.D.C. 1992); 5 U.S.C. § 552(a)(6)(C)(I).  Indeed, courts have routinely allowed agencies to process FOIA requests under the "first in, first out" rule.  See, e.g., Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Certainly, it took longer than twenty days to respond to

Judicial Watch's FOIA requests, but that is explained by the nature of these requests, the many offices to which they were directed, the number of FOIA requests [the agencies] regularly receive, and the treatment of FOIA requests on a first in/first out basis."); see also id. ("there are often instances where an agency will not be able to meet [the twenty-day] deadline").

As noted earlier, under FOIA, a court may also grant an extension to allow the agency to finish its search and processing where the agency has been unable to meet the deadline because of exceptional circumstances. See 5 U.S.C. § 552(a)(6)(c); see also Open America v. Watergate Special Prosecution Force, 547 F. 2d 605, 615 (D.C. Cir. 1976). As the Court of Appeals explained in Ogelsby v. United States Dept. of Army, "[f]requently if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination." 920 F.2d 57, 64 (D.C. Cir. 1990).

Here, the agency has not yet had an opportunity to determine the nature and scope of the requests and the applicability of any exemptions, among other things. In fact, plaintiffs filed their second FOIA request only slightly more than two weeks before their filing of this instant suit and motion for preliminary injunction. This second request appears to be very broad, seeking "all existing information sources" concerning aliens with arrests or convictions for drug possession, and is not limited to any particular time period or any specific types of communications or recordings. See Pls.' Ex. I at 2 (requesting all existing memos, reports, tabulations, analyses, letters, emails, telephone notes, and etc. that contain the requested information). If nothing else, the apparent broad scope and timing of plaintiffs' FOIA requests

16

show that their requested relief – for an order requiring the agency to process their requests within 20 days and to produce a Vaughn index within 10 days after that – is entirely premature. See Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) (the "early attempt in litigation of this kind to obtain a Vaughn index . . . is inappropriate until the government has first had the chance to provide the court with the information necessary to make a decision on the applicable exemptions"); United States Committee on Refugees v. Department of State, No. 91-3303, 1992 WL 35089, at *1 (D.D.C. Feb. 7, 1992) ("the preparation of a Vaughn index is unwarranted before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents") (internal quotation marks and citation omitted); Stimac v. U.S. Dep't of Justice, 620 F. Supp. 212, 213 (D.D.C. 1985) ("the preparation of a Vaughn Index would be premature before the filing of dispositive motions"); Pyne v. Commissioner, No. 98-00253, 1999 WL 112532 (D. Hawaii Jan. 6, 1999) (denying motion to compel preparation of a Vaughn index as premature when the agency had not yet presented any affidavits as to why the documents withheld could not be released).

Admittedly, the agency did not respond within 10 calendar days to plaintiffs' April 24, 2006 requests for expedited processing. That by itself, however, in no way establishes that plaintiffs are therefore entitled to expedited processing. FOIA contemplates that agencies sometimes may not meet the 10 day deadline, and treats such failures as denials of the request, not as entitlement to expedited processing. See 5 U.S.C. § 552(a)(6)(E)(iii) ("[a]gency action to deny or affirm denial of a request for expedited processing pursuant to this subparagraph, and

failure by an agency to respond in a timely manner to such a request shall be subject to judicial

review") (emphasis added).

### III.    Plaintiffs Have Failed to Establish a Threat of Irreparable Harm

Although the conclusion that plaintiffs are not likely to succeed on the merits effectively

decides the preliminary injunction issue, plaintiffs have also failed to establish irreparable injury.

"'The basis of injunctive relief in the federal courts has always been irreparable harm.'"  CityFed

Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir.1995) (quoting Sampson v.

Murray, 415 U.S. 61, 88 (1974)) (brackets omitted); see also Experience Works, Inc. v. Chao,

267 F. Supp. 2d 93, 96 (D.D.C. 2003) ("The sine qua non of granting any preliminary injunctive

relief is a clear and convincing showing of irreparable injury to the plaintiff.").  In order for a

plaintiff to demonstrate irreparable harm sufficient to warrant the entry of preliminary injunctive

relief, "the injury must be both certain and great; it must be actual and not theoretical."  Wisc.

Gas. Co. v. Federal Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985).  Injunctive

relief "will not be granted against something merely feared as liable to occur at some indefinite

time."  Id.  (citation and internal quotation marks omitted).  Instead, the party seeking injunctive

relief must show that "[t]he injury complained of [is] of such imminence that there is a 'clear and

present' need for equitable relief to prevent irreparable harm."  Id. (citation and internal quotation

marks omitted) (brackets in original).  A plaintiff's failure to meet its burden of establishing

irreparable harm is sufficient, in itself, to deny emergency relief.  CityFed Fin. Corp., 58 F.3d at

747.

Here, plaintiffs have failed to make a "clear showing" of "certain and great" harm.  For the same reasons that they could not establish the lower threshold of urgency required to justify expedition, plaintiffs cannot show that they will be irreparably harmed by their inability to provide the public with the requested information.  As previously discussed, the requested information has no direct relevance to the Supreme Court's determination of <u>Lopez</u> and <u>Toledo-Flores</u>.  It is also entirely speculative that plaintiffs' FOIA requests will produce responsive, non-exempt documents that will significantly contribute to the public debate on immigration policy.  <u>See</u> <u>Nation Magazine</u>, 805 F. Supp. at 74 (finding no irreparable harm because even if the Court "were to direct the speed up of the <u>processing</u> of their requests," plaintiffs had not shown that they were "entitled to <u>release</u> of the documents they" were seeking) (emphasis in original).  To be sure, it may be useful to have statistical information about aliens' characteristics and criminal records, but it is far from clear that the delay in obtaining such information will hamper public debate to such an extent as to cause irreparable harm.

Plaintiffs argue that the very nature of the right that they seek to vindicate in this case – expedited processing and release of agency records – depends on timeliness.  However, the loss of an abstract statutory right does not establish "certain and great" harm if the consequences of the loss of that right are not "certain and great."  <u>See</u> <u>Al-Fayed</u>, 2000 WL 34342564, at *5 (finding that denial of expedited processing did not constitute irreparable harm).  Indeed, the right to expedited processing is simply the right to move to the front of the queue and to have one's request completed "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii); 6 C.F.R. § 5.5(d)(4).  Expedition does not, as plaintiffs seem to believe, give a requestor the right to have

the request processed immediately without any consideration of the agency's practical

constraints.

### IV.    Plaintiffs' Motion, If Granted, Would Significantly Injure Other FOIA Requestors and the Public Interest

Finally, the interests of other FOIA requestors and the public also tip in favor of denying

the injunction.  Requests for expedition, by definition, injure others by prioritizing later-filed

requests over earlier-filed ones.  See Al-Fayed, 2000 WL 34342564, at *5 ("to compel the

agencies to provide expedited processing is to place Plaintiffs' requests in front of a whole queue

of others"); Nation Magazine, 805 F. Supp. at 74 ("any expedited treatment of plaintiffs' requests

will delay the processing of many other requests made ahead of plaintiffs by persons or entities

not parties to this suit"); Assassination Archives and Research Ctr., 1988 U.S. Dist. LEXIS

18606, at *1 ("Clearly, granting plaintiff expedited treatment would injure others who have filed

FOIA requests ahead of plaintiff").  Plaintiffs' proposed preliminary injunction ignores the

practical realities attendant to processing FOIA requests, which include the necessity to

determine the appropriate components that might have responsive documents, to identify

responsive materials, and to determine the applicability of exemptions, among other things.

Absent a compelling need to upset the first in, first out rule, the public interest will be

harmed if a requestor is able to using the litigation tactic of a preliminary injunction motion to

move in front of the line.  The institutional harm that would result from encouraging the filing of

preliminary injunctions in FOIA cases are easily predictable.  In addition to the clogging of

federal court dockets, ordinary FOIA requestors will suffer from resources that would otherwise

be available for their requests being shifted to handle motions for preliminary injunction and requests for expedition. The public interest requires that FOIA requestors be treated equally, and that expedition be reserved for the exceptional case. Plaintiffs have not presented such an exceptional case.

## CONCLUSION

Because plaintiffs have failed to meet the standard necessary for a preliminary injunction, this Court should deny their motion.

Dated: May 17, 2006                                         Respectfully submitted,


PETER D. KEISLER
Assistant Attorney General, Civil Division

KENNETH J. WAINSTEIN
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch

_____/s/_____
JEAN LIN  (NY#4074530)
Trial Attorney
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3716
Fax: (202) 616-8020
E-mail: jean.lin@usdoj.gov