UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUSAN B. LONG, ET AL.,

    Plaintiffs,

    v.

DEPARTMENT OF HOMELAND SECURITY,

    Defendant.

Civil Action No. 1:06cv00878 (PLF)

REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The defendant Department of Homeland Security ("DHS") fails to present any valid ground for its opposition to plaintiffs' pending motion for a preliminary injunction. Recent and directly applicable case law from this Court and from the D.C. Circuit, as well as the literal terms of the FOIA itself, completely refute DHS's contentions:

- Contrary to DHS's unsupported assertion, preliminary relief is manifestly appropriate in a FOIA case like this one — the courts have recognized that only with such relief can plaintiff's statutory right to expedited processing can be vindicated.

- Although DHS argues that there is no "urgency to inform the public" concerning the governmental activity that affects pending legislative and judicial matters, the courts have ruled precisely to the contrary.

- Although DHS contends that delay would not irreparably harm plaintiffs and the public, the courts have rejected nearly identical claims.

This Court should accordingly grant plaintiffs' motion and direct DHS to process plaintiff's FOIA request in accordance with the law.

### A. Preliminary injunctive relief is appropriate when an agency has failed to expedite a FOIA request as required by FOIA.

DHS suggests, without citing a case for the proposition, that injunctive relief is "particularly inappropriate in FOIA cases." Def. Opp. at 8. To the contrary, and as this Court has recently noted, "[o]n numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 35 (D.D.C. Feb. 16, 2006) (citing cases). Moreover, the D.C. Circuit has held that "FOIA imposes no limits on courts' equitable powers in enforcing its terms," and that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Id.* (bracketed alteration in original) (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters.*, 837 F.2d at 494.

Defendant argues that preliminary relief is inappropriate because it "would give a plaintiff the relief he ultimately seeks on the merits," and because it would "unnecessarily add[] an additional layer of procedure to FOIA litigation when there

are already adequate procedural mechanisms for managing that process."[1]  Def. Opp. at 9.  Plaintiffs' motion, however, does not seek resolution of the ultimate issues — it seeks only an order directing the timely *processing* of plaintiffs' request, and not a ruling on whether plaintiffs are entitled *production of* the records they seek (*i.e.*, whether any or all of the requested records are exempt under FOIA).  FOIA provides for mandatory expedited processing of FOIA requests precisely like plaintiffs', and the plaintiffs here seek to compel only what Congress has said that DHS must do.

FOIA provides that requesters in plaintiffs' position — those "primarily engaged in disseminating information," with "urgency" to inform the public concerning "Federal Government activity," *see* 5 U.S.C. § 552(a)(6)(E)(v) — are *entitled* to expedited processing, and that denials of such requests shall be reviewed de novo.  But this very right depends on timeliness; immediate action must be taken to vindicate that right, and as this Court has repeatedly recognized, a motion for a preliminary injunction is the appropriate procedural tool.  *See, e.g.*, *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 35 (citing cases) (granting preliminary injunction and allowing twenty days to process requested records); *Aguilera v. FBI*, 941 F. Supp. 144, 152–53 (D.D.C. 1996) (granting preliminary injunction and allowing one month

---

[1]  Defendant argues that instead of a preliminary injunction, "the parties can agree to a reasonable production schedule, or if they fail to agree, the court can set a deadline for a defendant agency to move for a stay…." Def. Opp. at 9.  Yet defendant never even *responded* to plaintiffs' request for expedited processing.  Pl. Br. at 10.  The best estimate DHS could supply plaintiffs as to when their requests might be processed was that it could take up to 18 months. Katzman Decl. at ¶ 12.

to process requested records); *see also Al-Fayed v. CIA*, No. 00-2092, 2000 U.S. Dist. LEXIS 21476, at *19–*20 (D.D.C. 2000) (denying preliminary injunction in FOIA case, but only after conducting four-part preliminary injunction analysis).[2]

> **B. Plaintiffs have demonstrated a likelihood of success on the merits, including that there is an "urgency to inform the public concerning actual or alleged Federal Government activity."**

Defendant DHS argues that plaintiffs have no likelihood of success on the merits because they cannot show that there exists an "urgency to inform the public concerning actual or alleged Federal Government activity." Def. Opp. at 10 (citing 5 U.S.C. § 552(a)(6)(E)(v); 6 C.F.R. § 5(d)(1)). This argument virtually falls of its own weight. DHS admits that the requested information relates directly to the "ongoing national debate about immigration policy," that "the requested information may be useful in public debates on immigration issues," and that it thus may also be

---

[2] DHS cites four cases for the proposition that the Court has "routinely denied requests for preliminary injunctive relief in a FOIA case." Def. Opp. at 9. None suggests that denial should be "routine." Two involved fact-specific denials. *See Al-Fayad*, 2000 U.S. Dist. LEXIS 21476; *Assassination Archives and Research Ctr., Inc. v. CIA*, 1998 U.S. Dist. LEXIS 10606, at *1 (D.D.C. 1988). In a third case, the plaintiff had not even *requested* expedited processing. *See Judicial Watch v. Dep't of Justice*, Def. Opp. at Ex. 2. Finally, in the fourth case, the court rejected sua sponte an injunction motion that it termed tantamount to a request for mandamus, *see Elec. Privacy Info. Ctr. v. Dep't of Justice*, Def. Opp. at Ex. 1, but the court cited no authority for that proposition, and the decision is contrary to numerous cases of this and other courts. *See, e.g., Payne Enters.*, 837 F.2d at 494 ("FOIA imposes no limits on courts' equitable powers in enforcing its terms.") Taken together with the numerous cases granting such relief, these cases offer no support for defendant's claim that this Court "routinely" denies requests for preliminary injunctive relief in FOIA cases.

relevant to Congress's consideration of pending immigration reform legislation. *See id.*

DHS likewise does not dispute that unless expedited processing is ordered, the information will be too late to affect the Supreme Court's consideration of the *Lopez* and *Toledo-Flores* cases. *See* Def. Opp. at 14. DHS, however, pronounces that in its view the requested records will not be "relevant" to the Supreme Court's consideration of those cases, Def. Opp. at 12. DHS concedes, however, that the Supreme Court will decide an important legal question in *Lopez* and *Toledo-Flores,* and ignores the important role that the requested information could play in those cases.

Defendant suggests that because the *Lopez* and *Toledo-Flores* cases involve "a pure question of law," "any statistical information will not shed light on that interpretation." *Id.* at 12. Such a narrow view of statutory construction has never been accepted by the Supreme Court, and it would in any event be inappropriate in this case, because the records plaintiffs seek are potentially highly relevant to the Court's consideration of those cases. Statistics about the number of aliens convicted of drug crimes, the number convicted of "aggravated felonies," and the average sentences received by those aliens, for example, could shed light on how expansive Congress intended the "aggravated felony" designation to be — and accordingly whether Congress intended that aliens such as Lopez and Toledo-Flores be classified as aggravated felons (the very question as to which the Court granted certiorari). The Court has frequently cited this sort of statistical and factual

information in interpreting statutes and determining the intent of Congress. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 296 nn.5–6 (2001) (relying on statistics concerning the proportion of aliens deported, and the factors affecting whether an alien is deported, in interpreting the Illegal Immigration Reform and Immigrant Responsibility Act and Antiterrorism and Effective Death Penalty Act); *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 160–66 (1993) (relying on statistics concerning the number of refugees arriving from Haiti in interpreting the Immigration and Nationality Act); *cf. Demore v. Kim*, 538 U.S. 510, 517–23 (2003) (in a constitutional case, relying on statistics about aliens convicted of crimes to determine Congress's statutory intent).[3]

Without benefit of supporting authority, DHS also proffers that, because the parties themselves are "capable" of bringing "relevant information" to the Supreme Court's attention, there is no need to grant the FOIA request of non-parties like plaintiffs. Def. Opp. at 13. This remarkable argument ignores the Supreme Court's own rules, which invite amicus curiae briefs concerning any "relevant matter not already brought to its attention by the parties," U.S. Sup. Ct. Rule 37, and amicus

---

[3] Indeed, the leading treatise on statutory construction notes that "in the process of statutory interpretation it frequently becomes necessary for a court to examine and weigh public sentiment and feeling, the conditions giving rise to the legislation, and the effect that a possible interpretation will have upon society. These too, are fundamental and essential elements of public policy which must be recognized in the process of statutory interpretation." Norman J. Singer, 2B SUTHERLAND STATUTORY CONSTRUCTION § 56:5 (6th ed. 2005).

briefs routinely bring to the Court's attention matters not put forth by the parties.[4] Information about the effects of a decision is a common, even *traditional,* purpose for which amicus briefs have been submitted to the Court. Precisely this sort of information was put before the Supreme Court by the Solicitor General's office when it noted the real-world effects of the "aggravated felony" provision. Pl. Br. Ex. B at 10. Plaintiffs now seek to obtain a fuller picture of that information, and it is not the Government's place to turn around and argue that the information has suddenly become "irrelevant."

Defendant attempts to distinguish other cases involving documents needed for pending court proceedings as involving "significant liberty interest[s]" not present here. Def. Opp. at 12. This argument backfires, because the Supreme Court's ruling will affect the deportation status of the petitioners in the *Lopez* and *Toledo-Flores* cases, as well as dozens, hundreds, or thousands of other aliens in their position.[5] Toledo-Flores received an eight-level sentencing enhancement to his conviction for improper entry to the United States because of a prior drug conviction that qualified as an "aggravated felony." *United States v. Toledo-Flores*, 149 Fed. Appx. 241 (5th Cir. 2005), *cert. granted,* 2006 U.S. LEXIS 2713 (Apr. 3, 2006); *see*

---

[4] If plaintiffs obtain and publish the information, of course, nothing will prevent the parties to the *Lopez* and *Toledo-Flores* cases from using the information in their briefs as well.

[5] Precisely how many aliens would be affected is, of course, unknown; that is precisely the type of question the records plaintiffs request would shed light on. But the Solicitor General acknowledged that it is "a frequently recurring issue of significant importance." Pl. Br. Ex. B at 10.

*also* U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(C) (2005). Lopez would be eligible to apply for cancellation of removal — and therefore might be able to remain in the United States — but for his classification as an "aggravated felon." Pl. Br. at 3–4. Accordingly, *even by the defendant's proposed test,* plaintiffs would be entitled to expedited processing because a substantial liberty interest is implicated.

Similarly unpersuasive is DHS's assertion that there is nothing urgent about using the requested information in the present legislative debate over immigration policy, *id.* at 14., despite its concession that "the requested information may be useful in public debates on immigration issues." *Id.* Yet the only cases that defendant cites are cases precisely like this one — cases in which there *was* a matter of current controversy concerning federal government policy, in which Congress was considering changing the law, and in which this Court *granted* expedited processing. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (ordering expedited FOIA processing when plaintiff sought information relevant to whether Congress should renew the Patriot Act's surveillance provisions); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (granting such expedition when plaintiff sought information relevant to whether Congress should reauthorize provisions of the Voting Rights Act).

This case is indistinguishable from those two cases: plaintiffs seek information directly relevant to whether Congress should change the laws concerning removal of aliens. As in those cases, Congress is considering whether to change the law — the House of Representatives has already passed one bill, and the

Senate is actively considering its own versions — and that consideration has sparked public controversy. *See* Pl. Br. at 5–6, 16–17. As in those cases, plaintiffs seek information that could prove directly relevant to that debate. *Id.* Defendant argues unconvincingly that "simple relevance to one or two sections of any bill" cannot be sufficient to show need for expedition. Def. Opp. at 14. When those one or two sections are important and controversial enough to have sparked protest and debate, however, that *is* enough to entitle a requester to expedited processing, and virtually identical Government arguments have previously been rejected. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d at 29 ("The government … argues that there is no urgency to inform the public about it, nor any significant recognized interest at stake. Section 215 [of the Patriot Act], however, unquestionably implicates important individual liberties and privacy concerns which are of immediate public importance in view of the ongoing debate regarding the renewal and/or amendment of the Patriot Act." (footnote omitted)); *Leadership Conf. on Civil Rights*, 404 F. Supp. 2d at 260 ("Plaintiff is monitoring election law reform and coordinating the legislative campaign to re-authorize provisions of the Voting Rights Act that are due to expire in 2007. … The importance of this issue is paramount and expedition of these documents could advance the current debate over the Voting Rights Act.").

### C. Plaintiffs and the public will be irreparably harmed if a preliminary injunction is not granted.

Finally, DHS argues that plaintiffs and the public will not be irreparably harmed by a delay in responding to plaintiffs' FOIA requests, while an injunction

would irreparably harm other requesters. These arguments are in fundamental conflict: if delay would harm other requesters, it would likewise harm plaintiffs. Yet this conflict has been resolved by FOIA itself, which provides that requests that satisfy the requirements for expedited processing are to be processed first, and processed "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).[6]

There is good reason for Congress's choice. Because of the urgency created by the Supreme Court's consideration of *Lopez* and *Toledo-Flores,* and the public and congressional debate about immigration policy, plaintiffs must receive the records they seek in a timely manner. If they do not, the information in those records will be unable to inform that debate. "As the Supreme Court has made clear, public awareness of the government's actions is 'a structural necessity in a real democracy.' Not only is public awareness a necessity, but so too is *timely* public awareness. For this reason, Congress recognized that delay in complying with FOIA requests is 'tantamount to denial.'" *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 40 (emphasis in original; citations omitted) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). This denial — of a right to expedited processing that plaintiffs are *entitled to* by statute, and of a right to the release of information that could play a vital role in the immigration debate, both in public

---

[6] Defendant cites *Assassination Archives and Research Ctr.*, 1998 U.S. Dist. LEXIS 10606, at *1, for the proposition that granting expedited processing injures others whose requests would be delayed. That case, however, was decided before the amendments to FOIA that created the statutory right to expedited processing. *See* Elec. Freedom of Info. Amendments of 1996, Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).

and in Congress — would harm both plaintiffs and the public, because they would be unable to participate fully in that debate. *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 41. "As time is necessarily of the essence in cases like this, such harm will likely be irreparable." *Id.* at 40–41.

Defendants argue that plaintiffs and the public will not be irreparably harmed because it is "entirely speculative that plaintiffs' FOIA requests will produce responsive, non-exempt documents that will significantly contribute to the public debate on immigration policy." Def. Opp. at 19. If this argument were accepted, no FOIA request would ever merit expedited processing, because no requester can know in advance what records the Government possesses, or what exemptions may or may not apply. This is why FOIA places the burden on agencies to demonstrate why documents should not be released, and subjects those decisions to *de novo* review. *Vaughn v. Rosen*, 484 F.2d 820, 823–25 (D.C. Cir. 1973).

Not only is it true, as DHS concedes, that "the requested information may be useful in public debates on immigration issues," Def. Opp. at 14, but it is equally clear that that debate is a matter of current public importance, and that the information at issue is especially valuable given the dearth of public information concerning the treatment of aliens with criminal convictions. *See* Katzman Decl. at ¶ 10. It is up to DHS to show that the requested documents would not "significantly contribute" to that debate; instead of doing so, it has made only the conclusory and invalid arguments refuted above.

**D.      Defendant does not challenge plaintiffs' argument that this Court should set a deadline for processing plaintiffs' requests.**

Defendant DHS challenges plaintiffs' entitlement to a preliminary injunction. It does not, however, challenge plaintiffs' argument that if it is entitled to expedited processing, then this Court should remedy defendant's failure to comply with FOIA by ordering defendant to produce any responsive records within twenty days, and a *Vaughn* index ten days later.[7]

Because plaintiffs have satisfied the standard necessary for a preliminary injunction, this Court should grant their motion and order defendant to process plaintiffs' FOIA requests within twenty days, and to provide a *Vaughn* index within thirty days.

---

[7]   DHS argues that it would be premature to order the preparation of a *Vaughn* index before the parties have filed dispositive motions. Def. Opp. at 16–17. When there is urgency to obtain the requested records, however, and expedited processing is accordingly ordered, courts do not hesitate to additionally order the agency to produce a *Vaughn* index. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 416 F. Supp. 2d at 43; *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004). Otherwise DHS could avoid producing responsive documents, and thus irreparably harm plaintiffs, by falsely claiming that the records plaintiffs seek are exempt. *See Vaughn v. Rosen*, 484 F.2d 820, 824–25 (D.C. Cir. 1973) (FOIA places burden on the agency to justify withholding of requests, since doing otherwise would allow it to evade the law).

|  | Respectfully submitted, |
|---|---|
| May 23, 2006 | /s/ <br> ALAN A. PEMBERTON <br> D.C. Bar No. 367108 <br><br> ROGER A. FORD <br> Massachusetts BBO No. 664675 <br> Admitted *pro hac vice* <br><br> COVINGTON & BURLING <br> 1201 Pennsylvania Avenue, N.W. <br> Washington DC 20004-2401 <br><br> (202) 662-6000 <br><br> Counsel for Plaintiffs |